# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Township of Moon | : | |
| | : | |
| v. | : | No. 1129 C.D. 2022 |
| | : | ARGUED: February 6, 2024 |
| Paul Schreiber and Lora | : | |
| Schreiber, husband and wife, | : | |
| Appellants | : | |

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**PER CURIAM**                                                **FILED:  April 2, 2024**

Appellants Paul and Lora Schreiber, husband and wife, appeal from an order of the Court of Common Pleas of Allegheny County denying their post-trial motions and entering judgment against them.  The Schreibers challenge on appeal the trial court's issuance of a permanent injunction against them as well as its order granting the Township of Moon's motions for attorney fees.  We affirm.

The pertinent facts are as follows.[1]  This matter involves fill and grading that the Schreibers conducted, without a permit, on their property located at 1215 Maple Street Extension in the Township.  At all relevant times, the Township had in effect a grading and excavating ordinance which provides, in pertinent part:

> 1. Except as exempted by [Section] 9-105, no person shall do any clearing, stripping, grading, construction or other activity involving the disturbance of natural terrain or vegetative ground cover, or no person shall allow such activities to occur on his property, unless he has applied for and obtained a valid grading permit from the Code Official.  Specifically, the following activities require a grading permit:

---

[1] The factual and procedural background of this matter is lengthy.  As we write for the parties, the Court will limit its recitation of the facts to those necessary to the disposition.

> A. Modifying, disturbing, blocking, diverting or otherwise adversely affecting the natural overland or subsurface flow of stormwater.
>
> . . . .
>
> C. Filling, clearing, stripping, excavating and grading of any land including stockpiling (temporary or permanent) of excavated or fill material.
>
> 2. Prior to beginning work associated with a grading permit, an applicant shall provide proof that the applicant or applicant's representative has applied for and/or obtained all necessary permits and approvals, including, but not limited to, permits granted by [the Department of Environmental Protection].

Moon Twp., Pa., Mun. Code § 9-104(1)(A),(C)&(2) (2015) (Grading Ordinance); Original Record (O.R.) at 39-40.[2] The exceptions to the Grading Ordinance found in Section 9-105 include, among other things, small quantities of fill, authorized Township capital improvement and public works projects, and accepted agricultural land management practices. O.R. at 40-41.

Section 9-124 of the Grading Ordinance, titled "Violations and Penalties," provides as follows:

> 1. Any person, firm, or corporation who shall violate any provision of this Part, or fails to comply therewith, or with any of the requirements thereof, **upon conviction thereof in an action brought before a magisterial district judge in the manner provided for the enforcement of summary offenses under the Pennsylvania Rules of Criminal Procedure**, shall be sentenced to pay a fine of not less than $300 nor more than $1,000 **plus costs, including reasonable attorney fees incurred by the**

---

[2] Because the original record was filed electronically and was not paginated, the page numbers referenced herein reflect electronic pagination.

2

**Township**, and, in default of payment of said fine and costs, to a term of imprisonment to the extent permitted by law for the punishment of summary offenses. A separate offense shall arise for each day or portion thereof in which a violation of this Part is found to exist and for each section of this Part found to have been violated. **The Township may also commence appropriate actions in equity** or other to prevent, restrain, correct, enjoin, or abate violations of this Part. All fines and penalties collected for violations of this Part shall be paid to the Township Treasurer. The initial determination of ordinance violation is hereby delegated to the Township Manager, the Police Department, the Code Official, the authorized designee of the Township Manager, and to any other officer or agent that the Township Manager or Board of Supervisors shall deem appropriate.

2. In addition, the Township, through its Solicitor, may institute injunctive, mandamus, or any other appropriate action or proceeding at law or in equity for the enforcement of this Part. Any court of competent jurisdiction shall have the right to issue restraining orders, temporary or permanent injunctions, mandamus, or other appropriate forms of remedy or relief.

Grading Ordinance § 9-124 (emphasis added); O.R. at 48.

The Township received numerous calls and complaints from residents in 2018 regarding the Schreibers' activities in placing fill on their property.[3] In July 2018, the Township filed in the trial court a complaint and motion for preliminary injunction seeking to enjoin the Schreibers' excavation and grading activities on their property without first obtaining a permit, and to have them remove the fill

---

[3] The Schreibers previously applied for a grading permit but were denied in 2011 and 2015 due to failure to pay the application fee and failure to provide all required information, respectively. In 2016, they were twice found not guilty of the summary offense of violating the Grading Ordinance.

material improperly placed, as well as requesting fines, costs, and attorney fees. *See* O.R. at 15-16, 58-60.

On August 7, 2018, the trial court issued an order granting a temporary injunction pending a hearing on the Township's complaint seeking permanent injunctive relief. O.R. at 171. The order specifically enjoined the Schreibers from dumping fill on their property pending further order of court and permitted the Township engineer to view the property for a period of two hours. *Id.* The Township attempted to conduct a site view several times but the Schreibers refused, thus prolonging the litigation and spawning several unsuccessful interlocutory appeals to this Court.[4] The Schreibers subsequently filed preliminary objections to the complaint asserting a demurrer and arguing that the action was barred by *res judicata*, collateral estoppel, and double jeopardy. *Id.* at 701-14. The trial court summarily overruled the preliminary objections. *Id.* at 971.

In January 2019, the Schreibers filed a praecipe for writ to join additional defendants, namely the Township's Solicitor, Dillon McCandless King Coulter & Graham L.L.P., as well as three individual attorneys from that firm. O.R. at 1015-16. The Schreibers later filed a second amended third party complaint to join these additional defendants, asserting claims of abuse of civil process and malicious prosecution. *Id.* at 1293-1315. The trial court *sua sponte* severed the

---

[4] *See Twp. of Moon v. Paul Schreiber and Lori Schreiber, husband and wife* (Pa. Cmwlth., No. 1245 C.D. 2018, discontinued Oct. 15, 2019); *Twp. of Moon v. Paul Schreiber and Lori Schreiber, husband and wife* (Pa. Cmwlth., No. 1415 C.D. 2018, discontinued Oct. 15, 2019); *Twp. of Moon v. Paul Schreiber and Lori Schreiber, husband and wife* (Pa. Cmwlth., No. 1542 C.D. 2018, filed Nov. 21, 2019), slip op. at 10 (granting Township's motion to quash for lack of jurisdiction because the trial court's order was not an appealable collateral order).

Schreibers' counterclaims and the Township retained new counsel in the equity action.[5] *Id.* at 1317-18.

In the meantime, Joseph F. Boward, the Township's engineer, conducted a view of the property on October 9, 2018. Trial Ct. Op., March 29, 2023, at 7. His resulting report noted 11 violations of the Township's ordinances based upon the Schreibers' fill activities on their property and concluded that none of the exceptions found in Section 9-105 of the Grading Ordinance applied. *Id.* at 7-8. Mr. Boward's report indicated, among other things, that the fill embankment on the Schreibers' property contained a diverse mixture of construction rubble and debris, including asphalt materials, and was poorly constructed and wholly unstable, presenting a hazardous condition and risk of landslide. *Id.* at 8.

After several continuances, an injunction hearing was conducted on June 24-25, 2019. At that time, the Township[6] presented testimony and photographic evidence in support of its claim that large amounts of unclean fill had been dumped on the property.[7]

On July 11, 2019, the trial court issued findings of fact and an order determining that the Schreibers had violated the Grading Ordinance because they placed unclean fill materials above a sewer line on their property without a permit, creating an unstable slope and a substantial risk of harm to surrounding properties. O.R. at 1767-68. The trial court permanently enjoined the Schreibers "from

---

[5] The Schreibers' counterclaims are not at issue in this appeal.

[6] The Township presented testimony from the following witnesses: Dawn Lane, Township Manager; Scott Brilhart, Township Assistant Manager and Planning Director; Zachary West and Phyllis Tkach, both of whom own property adjacent to the Schreibers; Gregory Seamon, Township Chief of Police; Scott Henkenmeyer, Township Public Works Facilities Manager; Mr. Boward; and professional engineer Kevin A. Brett.

[7] Testifying for the Schreibers were Robert Phillis, Sergeant for the Township Police, and Mr. Schreiber himself.

depositing any fill or conducting any fill, excavation[,] or grading activities on the[ir] property prior to securing a grading permit from" the Township. *Id.* at 1768. It further ordered the Schreibers to "remediate the hazardous slope and soil conditions that exist," and to retain a licensed professional geotechnical engineer to develop a remediation strategy. *Id.* In addition, the trial court gave the Township 15 days in which to file a petition for attorney fees. *Id.* at 1769. The Township's initial motion sought attorney fees totaling $88,679.00, as well as costs incurred in retaining its engineering experts totaling $14,555.50. *Id.* at 1794. The trial court set argument on the motion for attorney fees for September 30, 2019, and ordered that post-trial motions would not be due until the Township's motion for attorney fees had been decided. *Id.* at 1775, 1898.

After the injunction hearing was held and resulting order issued, the Schreibers filed a motion for recusal of the trial judge, the Honorable Donald Walko, Jr., and for a new trial. O.R. at 1901-05. While the Schreibers initially asserted that Judge Walko should recuse himself from the Township's motion for attorney fees, they later requested that he also recuse from the recusal motion as well as their request for a new trial. *Id.* at 1929-32. Judge Walko denied both motions following argument, *id.* at 1935-36; however, the trial court ultimately issued an order reassigning the action to the Honorable Michael A. Della Vecchia, *id.* at 2080.

By March 2020, the Schreibers still had not retained an engineer to work with the Township on a remediation plan, as ordered. Therefore, the Township filed a petition for rule to show cause why the Schreibers should not be held in contempt for failure to comply with the permanent injunction. O.R. at 1958-91. Judge Della Vecchia conducted a status conference with the parties in June 2021 at the Township's request, after which he issued an order attempting to facilitate the

6

Schreibers' compliance. *See id.* at 2122-24. However, in a motion for conciliation conference filed in October 2021, the Township noted that the letter it received from the Schreibers' then-retained engineer indicated "that nothing needs to be done" and failed "to propose any remediation plan at all, much less one satisfying the requirements set forth by [the] Township's engineer." *Id.* at 2128. Following another conference and with the consent of the parties, the trial court issued an order directing the Schreibers to produce copies of soil analysis reports as well as notes, photographs, and other data from their engineer's inspections of the property and directing their engineer to meet with Mr. Boward in person, without the parties or counsel, no later than January 17, 2022. *Id.* at 2136.

In May 2022, the Township filed a motion for entry of a Consent Decree, which the trial court so entered. The Consent Decree states, in part:

> 9. The [p]arties, wishing to avoid further litigation in relation to [the Schreibers'] alleged failure to comply with Judge Walko's [permanent injunction] Order, have agreed to resolve the [p]etition for [r]ule to [s]how cause by means of a Consent Decree, which if approved by the [trial c]ourt, will set forth a course satisfactory to both parties in resolution of the issues pertaining to remediation of the condition of the slope which had remained pending since the Court's order of July 11, 2019.
>
> 10. This Consent Decree does not resolve [the Township]'s [m]otion for [attorney f]ees, as supplemented, which remains pending before the Court.

O.R. at 2141; *see also id.* at 2145. Through the Consent Decree, the Schreibers agreed to take significant remedial and preventative measures under the supervision of their engineer.[8] The Consent Decree also specifically provides:

---

[8] For example, the Schreibers agreed to install a silt fence or appropriately-sized silt sock within 20 days, implement reasonable erosion control measures within 30 days, install survey **(Footnote continued on next page…)**

16. Nothing in this Consent Decree shall be construed:

    a. As an admission of wrongdoing by [the Schreibers];

    b. To restrict or limit the [Schreibers'] ability to fully litigate ancillary issues in this matter, including the pending [motion] for [attorney f]ees; and/or

    c. To infringe upon [the Schreibers'] appellate rights relative to any aspect of this case.

*Id.* at 2149.

Shortly thereafter, the Township submitted a second supplemental motion for attorney fees seeking $138,555.44 in attorney fees and $14,555.50 in previously documented expert fees, for a total of $153,110.94. O.R. at 2152-56. Following argument, the trial court issued an order granting the Township's motions for attorney fees and ordering the Schreibers to pay the full amount requested by the Township. *Id.* at 2243. The trial court subsequently denied the Schreibers' post-trial motions and entered judgment in favor of the Township and against the Schreibers. The appeal to this Court followed.[9]

---

monuments on the property and monitor them for evidence of any earth movement, and secure a bond for the purpose of guaranteeing completion of the required work, etc. O.R. at 2143-49.

[9] It should be noted that the Schreibers' non-compliance persisted even after entry of the Consent Decree and the appeal to this Court. As such, in March 2023, the Township filed a motion to enforce the Consent Decree. O.R. at 2574-97. The Township asserted multiple violations, including the Schreibers' failure to provide their engineer with the equipment necessary for him to properly observe the slope for the possibility of geological movement, and their refusal to develop any plan to address the past problematic readings. *Id.* at 2579-81. The Township sought to have the trial court hold the Schreibers in contempt and impose appropriate sanctions. *Id.* at 2582. On March 24, 2023, the trial court issued a consent order indicating that the parties had reached an agreement as to the relief sought by the Township and, therefore, granting in part the **(Footnote continued on next page…)**

At bottom, the Schreibers' appeal challenges the trial court's entry of a permanent injunction.[10] "The requirements for permanent injunctive relief are well settled: 'a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested.'" *Eagleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union*, 243 A.3d 764, 772 (Pa. Cmwlth. 2020) [quoting *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008)]. Moreover, in "reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *K.H. v. Pa. Interscholastic Athletic Ass'n*, 277 A.3d 638, 645 n.6 (Pa. Cmwlth. 2022) [quoting *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002)].

We discern no error in the trial court's determination. There is overwhelming evidence of record to support the Township's claim that the Schreibers placed unclean fill materials on their property without a permit, in violation of the Grading Ordinance. Neighbors as well as several Township employees testified that they personally observed trucks depositing large amounts of fill material onto the Schreibers' property, with the fill being described as containing dirt, concrete, metal, stumps, bricks, pipe, and asphalt. The record further establishes that the Schreibers' actions created an unstable slope and a substantial

Township's motion. *Id.* at 2601-02. *See* Pa.R.A.P. 1701(b)(2) (after an appeal is taken, a trial court may "[e]nforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter").

[10] The majority of the Schreibers' argument section of their brief focuses on the trial court's discussion in its Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) opinion pertaining to judicial estoppel. *See* Schreibers' Br. at 13-25. Specifically, the trial court found that the Schreibers could not contest the permanent injunction order because they took an inconsistent position in the Consent Decree by agreeing to remediate the conditions of the slope and fill on their property and agreeing to comply with the Grading Ordinance in the future. *See* Trial Ct. Op., March 29, 2023, at 13-18. Given our disposition we need not reach this issue.

9

risk of harm to surrounding properties given the potential for a landslide as well as placement of the heavy fill directly over a sewer line. The Township tried for many years and by various means to get the Schreibers to cease and abate these violations, to no avail. The fact that the Schreibers have continued their obstructive behavior and have failed to comply with both the permanent injunction order and the Consent Decree[11] – which they voluntarily entered into – serves to underscore the necessity of this action. In sum, we discern no error in the trial court's determination that the Township met its burden and, in particular, established a clear right to relief as a matter of law. *See Buffalo Twp.*, 813 A.2d at 664 n.4 ("Ultimately, the grant or denial of a permanent injunction will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law.").[12]

Next, the Schreibers argue that Judge Walko erred in denying their recusal motions, without a hearing, and that Judge Della Vecchia's failure to address the recusal issue in his Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) opinion frustrates their ability to obtain meaningful appellate review. They claim that, at the least, a remand is appropriate and necessary because there are no findings of fact in this regard.

---

[11] As the Township also notes, a consent decree is "a contract binding the parties thereto to the terms thereof," and "[a]s a contract, the court, in the absence of fraud, accident or mistake, has neither the power nor the authority to modify or vary the terms set forth." *Lower Frederick Twp. v. Clemmer*, 543 A.2d 502, 510 (Pa. 1988). The Schreibers have not alleged any fraud, accident, or mistake here, nor have they sought to modify the Consent Decree.

[12] The Schreibers also argue that the trial court erred in overruling their preliminary objections because the Township failed to plead sufficient facts establishing that they violated the Grading Ordinance or any of the requirements for injunctive relief. This argument similarly fails for the reasons stated above. In addition, while the complaint is succinct, it contains sufficient averments to make out a violation of the Grading Ordinance and assert that none of the exceptions therein apply.

10

First, we note that although Judge Walko issued an order denying the Schreibers' recusal motions, the case was nonetheless reassigned to Judge Della Vecchia. *See* O.R. at 2080. The Schreibers ultimately received the relief they requested in their recusal motions as Judge Della Vecchia, not Judge Walko, heard and ruled upon the Township's motions for attorney fees as well as the Schreibers' post-trial motions. Because the Schreibers received their requested relief and the case was assigned to another trial court judge, the recusal issue is moot.

Even if the issue were not moot, the Schreibers' arguments pertaining to recusal are without merit. "The party requesting recusal must produce evidence establishing bias, prejudice[,] or unfairness 'which raises a substantial doubt as to the jurist's ability to preside impartially.'" *DeLuca v. Mountaintop Area Joint Sanitary Auth.*, 234 A.3d 886, 895 (Pa. Cmwlth. 2020) [quoting *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998)]. Moreover,

> [i]n considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. *This is a personal and unreviewable decision that only the jurist can make. . . . Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. . . .* In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair[,] and competent.

*DeLuca*, 234 A.3d at 895 (quoting *Abu-Jamal*, 720 A.2d at 89) (emphasis added in *DeLuca*).

The record demonstrates that Judge Walko repeatedly afforded the Schreibers the ability to present evidence to support their recusal motions, yet they failed to do so. The Schreibers' arguments relied solely upon purported campaign contributions, many of which were decades old and made during Judge Walko's previous legislative campaign. In short, the Schreibers failed to produce evidence to meet their heavy burden. *See, e.g.*, *Residents of Buckingham Springs v. Bucks Cnty. Assessment Off.*, 60 A.3d 883, 888 (Pa. Cmwlth. 2013) (campaign contributions from many years prior and for smaller amounts did "not show bias, or even the appearance of bias"). A remand is neither necessary nor warranted here, and we discern no abuse of discretion in Judge Walko's decision.

Finally, the Schreibers argue that the trial court erred in granting the Township's motions for attorney fees because the Grading Ordinance does not provide for such fees in actions in equity; rather, it only contemplates attorney fees upon conviction of a summary offense before a magisterial district judge. *See* Grading Ordinance § 9-124; O.R. at 48. Accordingly, the Schreibers argue that the attorney fees award should be vacated.

However, as the Township correctly notes, the Schreibers never raised this argument before the trial court. It is not contained in their responses to any of the Township's three motions for attorney fees, to which the Schreibers asserted general denials, and was not raised during argument. *See* Suppl. R., filed March 1, 2024. An issue cannot be raised for the first time on appeal, and the Schreibers' failure to raise this issue before the trial court results in waiver. *Orange Stones Co. v. City of Reading*, 32 A.3d 287, 291 (Pa. Cmwlth. 2011); *see also* Pa.R.A.P. 302(a).

Accordingly, the trial court's order is affirmed.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Moon               :
                                   :
            v.               :    No. 1129 C.D. 2022
                                   :
Paul Schreiber and Lora     :
Schreiber, husband and wife,   :
             Appellants   :

PER CURIAM

## **O R D E R**

AND NOW, this 2nd day of April, 2024, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.